**Lillian WILCOX, Respondent,**

v.

**Harold F. SWENSON, Administrator De Bonis Non With Will Annexed of the Estate of Lenora J. Suddarth, Deceased, Appellant.**

No. 46683.

Supreme Court of Missouri,

Division No. 2.

May 11, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied June 8, 1959.

Paul C. Sprinkle, Richard P. Sprinkle, Sprinkle, Carter, Sprinkle & Larson, Kansas City, for appellant.

Albert J. Yonke, Kansas City, for respondent.

BOHLING, Commissioner.

Mrs. Lillian Wilcox recovered a $20,000 judgment against Harold F. Swenson, administrator of the estate of Mrs. Lenora J. Suddarth, deceased, for personal injuries sustained while riding in an automobile operated by Mrs. Suddarth which collided with the steel superstructure of a bridge in Illinois. Mrs. Suddarth died from injuries received in the accident. Respondent, who was sixty-five, sustained serious and permanent injuries. On this appeal the administrator questions the submissibility of respondent's case, the competency of certain witnesses, and the correctness of certain instructions.

The issue of the submissibility of respondent's case calls for a consideration of the evidence most favorable to respondent.

Mrs. Suddarth, Mrs. Wilcox, in the front seat, Mrs. Clara Creamer and Mrs. Pearl Scott in the rear seat, were en route from

Kansas City, Missouri, where the ladies lived, to Toronto, Canada, a distance of approximately 1,100 miles, to attend a church convention. Mrs. Creamer has an action pending for injuries sustained in this accident and appellant states in his brief that Mrs. Scott also has an action pending for her injuries.

The testimony was that Mrs. Suddarth's Chevrolet was in good condition, including its steering mechanism and brakes.

Mrs. Clara Creamer testified she was the last of the three ladies to decide to make the trip in Mrs. Suddarth's automobile. She called at Mrs. Suddarth's home and Mrs. Suddarth informed her she had made arrangements for Mrs. Wilcox and Mrs. Scott to pay her $30 each for the one-way trip from Kansas City to Toronto; that she had arrived at the $30 charge after considering the mileage and cost of operation in making the trip to Toronto. They had discussed returning via New England and the price for the return trip was to be agreed to later. She stated it was understood when they were ready to start that the other ladies would assist Mrs. Suddarth with the driving.

Mrs. Pearl Scott testified by deposition. She discussed the trip with Mrs. Suddarth. She first met Mrs. Wilcox and Mrs. Creamer on the morning of departure and had not discussed the trip with either of them. She testified Mrs. Suddarth informed her Mrs. Wilcox and Mrs. Creamer thought $30 would be a fair charge for the one-way trip to Toronto; that they were to discuss the return trip later, and that the $30 was to be full payment for the trip to Toronto.

The ladies left Kansas City about 7:30 a. m., August 13, 1955, a "beautiful day." Mrs. Suddarth picked up Mrs. Scott, Mrs. Creamer and Mrs. Wilcox in that order. When Mrs. Wilcox came to the car Mrs. Suddarth said: "Let's get this money situation straightened out," and each lady paid her $30. Mrs. Wilcox suggested they take a certain route. Mrs. Suddarth stated she was driving her car, thought they should

take the route she desired, and she did so. The testimony was that neither Mrs. Wilcox, Mrs. Creamer nor Mrs. Scott had any control over the automobile, the manner of its operation, its speed or where Mrs. Suddarth stopped the car.

Mrs. Suddarth drove to Moberly, where the ladies had lunch, and then to Hannibal. Mrs. Creamer testified that at Moberly Mrs. Suddarth began to show she was tired and she asked Mrs. Suddarth if she might drive for awhile. Mrs. Suddarth replied that she was all right and thought she could drive all day. Mrs. Suddarth permitted the Chevrolet to run off the pavement several times between Moberly and Hannibal; Mrs. Creamer imagined, when pressed on cross-examination, as many as "a dozen times."

After crossing the bridge at Hannibal Mrs. Suddarth drove east over Highway 36, a two-lane concrete highway, 18 feet wide, running through flat bottom land. She drove off the concrete onto the shoulder and Mrs. Wilcox said: "You better let me take the wheel." Mrs. Suddarth replied that she had driven a long ways and might be a little tired, but felt she could make it to Springfield, Illinois. She drove off the concrete four or five times more, and Mrs. Creamer said: "Lenora, either let Lillie [Mrs. Wilcox] or me drive." Mrs. Suddarth replied: "No, I will drive on in as far as Springfield before I quit."

About 3:00 p. m. Mrs. Suddarth drove the Chevrolet into the south steel superstructure of a drainage ditch bridge approximately 5 miles east of Hannibal. The bridge has a concrete floor 21 feet wide, with the steel superstructure abutting the flooring. The highway extends practically straight east but as it nears the bridge has a sweeping curve to the north, about 3/10 of a mile long. It is then straight for "a good block" before coming to the bridge. The shoulder, which had bituminous aprons slanting away from the concrete, was somewhat lower than the pavement.

Mrs. Suddarth was driving about 50 m. p. h. and drove off the concrete onto

the south shoulder with both wheels when within about a block and a half of the bridge. Mrs. Creamer testified she felt the car drop down; that Mrs. Suddarth stepped on the accelerator (witness could feel the speed of the Chevrolet increase), whirled the wheel to the left, went over across the highway, then swerved back on the south side of the road, and then swerved the other way, witness could not say how many times she swerved back and forth; that the Chevrolet then went off the concrete on the south side and struck the bridge head-on, and that there was no traffic at the time interfering with Mrs. Suddarth's operation of the Chevrolet. Mrs. Scott gave corroborating testimony, stating Mrs. Suddarth asked: "What did I hit?" Mrs. Scott estimated their speed at the time of the collision at 60 m. p. h. or a little more, and Mrs. Creamer placed it at 60 to 70 m. p. h. The exhibits disclose that the Chevrolet struck the steel superstructure head-on at a point to the left of the center of the Chevrolet.

Appellant contends Mrs. Creamer and Mrs. Scott were incompetent witnesses "since they were parties to a contract with the deceased defendant along with plaintiff herein with respect to the arrangements for transportation." The contention is based on and appellant quotes the following from § 491.010 (statutory references are to RSMo 1949 and V.A.M.S. unless otherwise noted): " * * * that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, * * * the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided * * *."

■ Bernblum v. Travelers Ins. Co., Banc, 340 Mo. 1217, 105 S.W.2d 941, 945, states "that the statute was intended to be a qualifying and not a disqualifying statute, except where it adds a new specific disqualification of its own." Allen Estate Ass'n v. Fred Boeke & Son, 300 Mo. 575, 254 S.W. 858, 865[10].

As developed hereinafter, the cases stressed by appellant are distinguishable on the facts. In Vigeant v. Fidelity Nat. Bk. & Trs. Co., 239 Mo.App. 46, 188 S.W. 2d 533, 537[6], the agent making the contract for the corporate defendant died. In Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, 19[8, 9], the contract was effected solely by the co-contractor who died. In Allen v. Jessup, Mo., 192 S.W. 720, 722[4, 8], the husband, claiming to act for his wife, had a present, actual, vested interest in the matter and came within § 491.010. Appellant also quotes §§ 386 and 390 of Greenleaf on Evidence from Wagner v. Binder, Mo., 187 S.W. 1128, 1151[17, 18]. Wagner v. Binder (1152 [19], 1155) held an agent of the plaintiff was not disqualified as a witness by the death of a defendant.

Snider v. McAtee, Mo., 178 S.W. 484, approving 165 Mo.App. 260, 147 S.W. 136, involved the purchase of 65 shares of stock by John A. Snider, Blucher Sperling and B. S. Schwab from Hugh R. Quinn, who died prior to trial. Plaintiff purchased 22, Schwab 20, and Sperling 23 shares. Later, they learned that Quinn had misrepresented the value of the stock, and Quinn agreed to return to each the difference between the actual value and the purchase price. The purchasers filed claims against Quinn's estate. In holding Sperling was a competent witness to establish Snider's claim, the court stated (178 S.W. loc. cit. 488[2, 3]): "We have reached the conclusion that the witness was not a party to the contract or cause of action in issue and on trial in this case. The evidence shows that all of the three purchasers were present in the bank at the time Quinn sold the 65 shares of stock. But it appears, we think, clearly, from the evidence, that, before the sale was made, each purchaser, for himself, decided

upon the number of shares he would purchase. The transfer of the stock was made separately to each individual purchaser, and each purchaser respectively paid Quinn for the shares so purchased. * * * It may be true that he then was, and now is, an interested witness, yet interest alone would not disqualify him from testifying in the case." See also Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875[5]; Martin v. Abernathy, 220 Mo.App. 76, 278 S.W. 1050[3–5].

In Freeman v. Berberich, 332 Mo. 831, 60 S.W.2d 393, plaintiff, riding in an automobile operated by defendant Sims, was injured when it collided with a truck owned by defendant Berberich and driven by his agent, who, at the time of trial, was dead. The court considered (60 S.W.2d loc. cit. 401) that § 491.010 "is broad enough to cover any cause of action ex delicto as well as any cause of action ex contractu. We cannot, under its terms, say that it was not meant to cover all actions ex delicto.

"We do not, however, think there is any reason to justify its application to actions ex delicto for personal injuries, except as to the actual parties to the cause of action in issue and on trial." See also Grimm v. Gargis, Mo., 303 S.W.2d 43, 50[12]; Pietrantonio v. Tonn's Estate, 278 Mich. 535, 270 N.W. 777, 779[8]; Sankey v. Interstate Dispatch, Inc., 339 Ill.App. 420, 90 N.E.2d 265, 266[1]; Metropolitan Life Ins. Co., v. Gosney, 8 Cir., 101 F.2d 167, 171[7]. Appellant does not point out wherein Vaughn v. Scade, 30 Mo. 600, 601, 606, a tort action decided in 1860, applies. At that time parties were incompetent to testify. The main features of now § 491.010 were added in 1865. Freeman v. Berberich, 60 S.W.2d loc. cit. 398, 399.

■ Mrs. Creamer and Mrs. Scott are not parties to this action. Each passenger's contract with Mrs. Suddarth was a separate and individual agreement with her, made at a different time and outside the presence and hearing of the other two. The rights of each passenger arose from her individual contract and was not derived from Mrs. Suddarth's contract with either of the others. Each passenger severally paid Mrs. Suddarth $30. Mrs. Suddarth's statements to Mrs. Creamer and to Mrs. Scott in discussing the trip are in harmony with the foregoing. Neither witness would gain or lose by the direct legal operation of any judgment in the instant action. It would not be binding upon either in an action for her injuries. Their interest is in the questions involved rather than the event of respondent's action. Respondent was not permitted to testify with respect to the facts under discussion. Appellant's authorities do not establish that the court erred in admitting the testimony of Mrs. Creamer and Mrs. Scott, and the contention is overruled.

Appellant claims respondent failed to make a submissible case. Respondent submitted two grounds for recovery. One was on the theory Mrs. Suddarth was guilty of willful and wanton misconduct. The other was on the theory respondent was a paying passenger and Mrs. Suddarth was guilty of ordinary negligence.

Under the Illinois law, so far as pertinent to the issue, no guest riding in a motor vehicle, "without payment for such ride, * * * shall have a cause of action for damages against the driver or operator of such motor vehicle * * * for injury * * * in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle * * *." Chap. 95½, § 58a, Ill.Rev.Stat. 1955.[1]

Appellant says there was no legal proof of willful and wanton misconduct on the part of Mrs. Suddarth and, in addition, "the plaintiff was engaged in a joint enterprise and, therefore, could not recover against another member of such joint enterprise."

■■ We follow the Illinois courts as to what constitutes willful and wanton

1. Now S.H.A.Ill. ch. 95½, § 9–201.

misconduct even though the Illinois rule may not be as strict as our own. Boehrer v. Thompson, 359 Mo. 465, 222 S.W.2d 97, 99[2, 3], stating: "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care. [Citing Illinois cases.]" See also Bartolucci v. Falleti, 382 Ill. 168, 46 N.E.2d 980, 983; Amenda v. Suits, 6 Ill.App.2d 395, 128 N.E.2d 367, 368.

Stephens v. Weigel, 336 Ill.App. 36, 82 N.E.2d 697, 699, states: "[I]t is generally established that defendant must exhibit a lack of regard for the safety of others, and a conscious indifference to the consequences that might follow from his acts. * * * It is not necessary, however, that defendant intend that plaintiff should be injured by reason of his acts, nor is it necessary that defendant actually know the dangers to which plaintiff is exposed. It is sufficient if he has notice which would alert a reasonably prudent man, and he does not take reasonable precautions under the circumstances." See Barnes v. Lackey, Mo., 319 S.W.2d 638, 642[1–7]; Fullington v. Southeastern Motor Truck Lines, Inc., Mo.App., 254 S.W.2d 246, 251; McCarty v. Bishop, 231 Mo.App. 604, 102 S.W.2d 126, 128[3, 4]; Barmann v. McConachie, 289 Ill.App. 196, 6 N.E.2d 918, 920[1].

Myers v. Krajefska, 8 Ill.2d 322, 134 N.E.2d 277, 280[5], states: "The basic element in all of these cases indicates that liability can be founded under such a cause of action where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved. The knowledge concerning other persons can be actual or constructive."

The following facts have been considered to make a case for the jury under the Illinois guest statute:

In Taylor v. Laderman, 349 Mo. 415, 161 S.W.2d 253, 254, defendant was returning to St. Louis at night with his girl friend and parties she had invited to accompany them. He became angry with her and drove at a speed of about 60 m. p. h., in the middle of the highway, and when meeting another motor vehicle, defendant would suddenly turn towards the shoulder and at times drive off the highway. Plaintiff asked defendant to let him drive every time defendant swerved off the highway.

In Fullington v. Southeastern Motor Truck Lines, Inc., Mo.App., 254 S.W.2d 246, 249, 251, plaintiff was a guest in the automobile of Virgil Denton (also a defendant), and was injured in an intersection collision between Denton's automobile and a truck of the corporate defendant. One witness for plaintiff testified that Denton entered the intersection at 30 to 35 m. p. h. without stopping at a stop sign, and a submissible case was held to have been made on willful and wanton misconduct. See also Murphy v. King, 284 Ill. App. 74, 1 N.E.2d 268, 271, stating: "A conscious indifference to consequences which is shown by an intentional disregard of a known duty necessary to the safety of the person or property of another would come within the definition of willful or wanton negligence."

In Stephens v. Weigel, supra, defendant was westbound on a four-lane highway, at a speed of 50 to 60 m. p. h., despite admonitions to slow down. His headlights cast a beam of only 11 to 20 feet ahead. He drove off the pavement onto the shoulder at a curved portion of the road and continued ahead on the shoulder for 250 feet until his car struck a telephone pole.

■ Under the authorities, the combination of the acts of Mrs. Suddarth was sufficient to sustain a finding of willful and wanton misconduct. The jury could find

that Mrs. Suddarth had been driving for about seven hours. She appeared to be tiring at Moberly and permitted her automobile to run off the pavement several times between Moberly and Hannibal. She continued to run off the pavement after leaving Hannibal, admitted she was tired, but insisted on driving to Springfield. She refused to permit Mrs. Creamer or respondent to relieve her. She drove off the pavement about a block and a half before reaching the bridge. Instead of applying her brakes and slackening speed or stopping, she continued to swerve from side to side across the highway, and increased her speed from 50 m. p. h. to 60 or 70 m. p. h. before striking the steel superstructure of the bridge.

■ Appellant's position to the effect Mrs. Suddarth's negligence is to be imputed to respondent on the ground they were "engaged in a joint enterprise" and respondent may not recover is not well taken for several reasons.

Appellant's cases of Grubb v. Illinois Terminal Co., 366 Ill. 330, 8 N.E.2d 934, 938[11], and Birnbaum v. Kirchner, 337 Ill.App. 25, 85 N.E.2d 191, 193[1], do not establish a joint enterprise under the instant record. For instance, the Grubb case was not an action against a member of the joint enterprise, but against a third party. Three sisters were on their way to Springfield to purchase material to decorate their home and appellee's testimony established that the costs of the trip and the material were to be borne by each equally and that each had a right to control the operation of the automobile. In the instant case Mrs. Suddarth had control over her automobile. She determined the route, the speed, and where she stopped. She refused to allow her passengers to drive when she appeared tired and they offered to relieve her. The evidence established that the one-way fare from Kansas City to Toronto by way of bus was $25.19 and by rail was $35.02. The ladies paid Mrs. Suddarth for their transportation the sum that was actually agreed upon and which was in line with charges made by others therefor. Miller v. Miller, 395 Ill. 273, 69 N.E.2d 878, 882, 883. Respondent did not have control over Mrs. Suddarth's automobile. See Donahoo v. Illinois Terminal R. Co., Mo., 275 S.W.2d 244, 251[7–9], involving materially different facts but stating the Illinois law respecting joint enterprises is to the same effect as the Missouri law. Tannehill v. Kansas City, C. & S. R. Co., 279 Mo. 158, 213 S.W. 818, 822, states the negligence of the driver of an automobile is not imputable to a mere guest or a passenger who has no authority over the automobile or its driver.

It is not clear, as stated in Bostrom v. Jennings, 326 Mich. 146, 40 N.W.2d 97, 100, that appellant's case of Barnett v. Levy, 213 Ill.App. 129, held that the negligence of one member of a joint enterprise, the defendant, was imputable to another member in actions between them, and that the court seems to have affirmed defendant's judgment on the ground there was evidence to sustain the jury's finding that defendant was not negligent and on the ground of a fatal variance between plaintiff's pleadings and proof as to the relationship existing between plaintiff and defendant. The accident occurred in the state of New York, and the only case cited bearing on the joint enterprise issue was Beaucage v. Mercer, 206 Mass. 492, 92 N.E. 774, 138 Am.St.Rep. 401, which was an action by persons engaged in a joint enterprise against a third party, a materially different situation. The Illinois case considered the case was for the jury and, closely read, we think it does not aid appellant. Discussing the issue, Prosser on Torts, 2d ed., 366, states: "A few courts, entirely mistaking the nature of the vicarious liability in the joint enterprise cases, have held that the negligence of the driver is to be imputed to the passenger to bar recovery even when he brings his action against the negligent driver himself. There seems to be no possible justification for such a result." See McCombs v. Ellsberry, 337 Mo. 491, 85 S.W.2d 135, 140[12, 13]; Annotation, 85 A.L.R.

632(IV); 65 C.J.S. Negligence § 168, pp. 814, 816, 824.

We next consider appellant's attack against instruction No. 3, which he says "assumes a fact to be true and draws a legal conclusion, thereby invading the province of the jury." The instruction informed the jury "that if you find that there was an arrangement between the plaintiff and defendant's decedent, Lenora Suddarth, to pay an agreed upon sum of Thirty Dollars for transportation, as such, from Kansas City to Toronto, it would constitute the plaintiff a 'paying passenger' as the term is used in these instructions." Bearing in mind the facts hereinabove stated with respect to this issue, which were uncontradicted, the instruction is in harmony with what is considered to correctly state the law in Dirksmeyer v. Barnes, 2 Ill.App.2d 496, 119 N.E.2d 813, 817[10]. Under the instruction the jury was required to find that there was an arrangement to pay an agreed upon sum for the transportation, which conforms with what is said in Miller v. Miller, supra, the only authority cited by appellant. See Perrine v. Charles T. Bisch & Son, 346 Ill.App. 321, 105 N.E.2d 543, 547[8–10]. This disposes of the point made.

Appellant makes the point: "The court erred in giving instruction No. 1 on behalf of the plaintiff because said instruction imposed absolute liability upon the defendant; fails to contain sufficient facts upon which a jury could infer negligence and is in conflict with and eliminates the defenses submitted by way of instruction."

Appellant's point does not comply with Supreme Court Rule 1.08 (RSMo 1957 Supp., p. 1334), 42 V.A.M.S., which requires an appellant's brief to state "(3) The points relied on, which shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous * * *." Eisenbarth v. Powell Bros. Truck Lines, Inc., Mo., 161 S.W.2d 263, 268 [12]; Conser v. Atchison, T. & S. F.

R. Co., Mo., 266 S.W.2d 587, 589. For instance, appellant's point does not state wherein the instruction "imposed absolute liability upon the defendant," or wherein it failed to "contain sufficient facts upon which a jury could infer negligence," or wherein it was "in conflict with" defenses submitted in defendant's instructions, or that defendant's instructions correctly stated the law and instruction No. 1 misstated the law.

Summarized, respondent's said instruction required findings based upon all the evidence in the case that respondent was a paying passenger in an automobile operated by Mrs. Suddarth eastwardly on Highway 36 in the state of Illinois on the day in question; that respondent was in the exercise of ordinary care for her own safety, and "if you further find that said Lenora Suddarth caused, allowed or permitted said automobile to leave the paved portion of said highway and run onto the shoulder of said highway, if you so find, and if you further find that said Lenora Suddarth thereafter caused or permitted said automobile to run into and collide with the superstructure of a bridge, if you so find, and if you further find that by causing or permitting said automobile to run off the paved portion of said highway and onto the shoulder thereof and thereafter to run into and collide with the superstructure of a bridge, if you so find, said Lenora Suddarth was negligent, if you so find" et cetera.

The instruction required a finding that the hypothesized acts of Mrs. Suddarth constituted negligence, and, absent a finding of negligence, imposed no liability upon appellant. It did not impose absolute liability on appellant.

The instruction was based upon the evidence favorable to respondent. Under that evidence Mrs. Suddarth drove off the pavement about a block and a half from the bridge and proceeded ahead on and off the pavement until the automobile collided with the superstructure of the

bridge. Appellant's case of Rosenkoetter v. Fleer, Mo., 155 S.W.2d 157, 159 [1], differs in that under respondent's evidence no other car was involved in this accident. The only evidence of another car was an extrajudicial statement introduced to impeach Mrs. Creamer, which she denied, and was to the effect that car did not interfere with Mrs. Suddarth's operation of her car. Nor does the instruction assume controverted facts as in appellant's cases of George v. Allen, 362 Mo. 971, 245 S.W.2d 848, 850 [3, 4], or Alexander v. Hoenshell, Mo.App., 66 S.W.2d 164, 167, where plaintiff's instruction assumed negligence on the part of defendant, and ignored defendant's evidence and plea of the contributory negligence of the driver, plaintiff's son. Instructions beginning with "and if you further find" in hypothesizing a fact and concluding with "if you so find" do not assume the fact to be found. Henson v. Jasinsky, Mo., 251 S.W.2d 601 [4]; Pogue v. Rosegrant, Mo., 98 S.W.2d 528[4]. Some acts are so simple and out of the ordinary that a statement of the ultimate facts is about as specific as need be. The facts here involved under respondent's evidence are simple and, although additional facts might have been submitted, we think sufficient essential facts to support the verdict were required to be found. Rogles v. United Rys. Co., Mo., 232 S.W. 93, 97 [5], loc. cit. 96 [1, 2] stating: "(f) Indeed, the fact that the driver permitted the truck to swerve ·from the street and to run upon the sidewalk, where it had no right to be, and over the plaintiff upon such sidewalk, where she had a right to be, was in itself evidence of negligence * * * sufficient to submit the case to the jury." Goldbaum v. James Mulligan Printing & Pub. Co., 347 Mo. 844, 149 S.W.2d 348, 352 [4]; Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, 917 [3]; Rockenstein v. Rogers, 326 Mo. 468, 31 S.W.2d 792, 798 [1]; Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500 [2]. See the instruction approved in Alley v. Wall, Mo.App., 272 S.W. 999, 1002. We overrule appellant's point.

▮ Appellant makes the point: "The court erred in giving instruction No. 2 because it allowed the plaintiff to recover for willful and wanton negligence when there was no proof of such and when said instruction was in conflict with instruction No. 1 given on behalf of the plaintiff and when said instruction was in conflict with instructions numbered 11 and 12." The point does not comply with Supreme Court Rule 1.08, mentioned supra.

Appellant, in his argument, directs our attention to the definition of willful and wanton negligence in Aldridge v. Morris, 337 Ill.App. 369, 86 N.E.2d 143, 145 [1, 2], his only cited authority, wherein defendant's liability was considered an issue for the jury. We have hereinbefore reached a like conclusion in the instant case.

▮ Respondent's said instruction predicated a recovery on no less than six factual issues with respect to the operation of the automobile by Mrs. Suddarth, and required the jury to find that said hypothesized acts constituted willful and wanton negligence on her part and that respondent was injured as a direct result of such willful and wanton negligence. Appellant, in his argument, makes assertions to the effect that the instruction authorized a respondent's verdict upon a finding of some but not all of the hypothesized facts. The hypothesized facts were submitted in the conjunctive and the instruction refutes appellant's assertions. Appellant has not established error in the giving of respondent's instruction No. 2.

Appellant contends respondent's damage instruction is erroneous "in that it allowed the jury to speculate as to the amount of damages." Respondent's said instruction informed the jury if they found for respondent they should assess respondent's damages at such sum as they found "from the evidence to be fair and reasonable compensation for the injuries and disabilities, if any, sustained by her, if so, and directly resulting from the negligence of defendant as submitted in these instruc-

tions, if you so find, * * * and for such expenses for hospital, medical and nursing services, if any, as you may find and believe from the evidence plaintiff has spent or obligated herself to pay by reason of her injuries, if any, and directly caused thereby, and for such expenses for hospital, medical and nursing services, if any, as you find and believe from the evidence plaintiff is reasonably certain to incur in the future by reason of her injuries, if any, and directly caused thereby."

■ Appellant, in his argument, says this instruction allows respondent to recover for whatever she was obligated to pay for hospital, medical and nursing services, and for such as she may be reasonably certain to incur in the future. Respondent does not dispute that recovery for such items is limited to the reasonable value thereof. In Murphy v. S. S. Kresge Co., Mo.App., 205 S.W.2d 252, 255 [3–6], the court considered there was no substantial evidence to support a recovery for such services, and in Girratono v. Kansas City Pub. Serv. Co., Mo.App., 243 S.W.2d 539, 546 [17], and 363 Mo. 359, 251 S.W.2d 59, 65 [9, 10], appellant's citations, it appears that there was not sufficient competent evidence that such services were necessary, what the amount of the charges were, or that they were reasonable.

The instant record differs in that respondent adduced testimony that she was in the hospital for 179 days and incurred necessary and reasonable expenses of $3,-750 or more. At the time of trial, over two years after her injuries, she was confined to her home. She cannot step up or sit in an ordinary chair, but gets around in a specially built chair and on crutches. She had one hundred per cent permanent disability of the body as a whole. It is necessary for someone to be available to assist her and she should not be left alone

for over an hour or two at a time. To improve her condition will entail reasonable expenses of more than $1,500, but she will not be able to do work of any type. Prior to her injuries she was a healthy and active person. Appellant directs our attention to no testimony to the contrary.

The instruction started out with the requirement that the jury should assess respondent's damages at such sum as they found from the evidence "to be fair and reasonable compensation for the injuries and disabilities, if any, sustained by her * * * and for such expenses for hospital, medical and nursing services" et cetera. Although formally defective in the omission of the word "reasonable" before the word "expenses" for necessary hospital, medical and nursing services, past and future, like instructions under like records have been held not prejudicially erroneous. Powers v. Penn Mut. Life Ins. Co., 91 Mo.App. 55, 69; Posch v. Southern El. R. Co., 76 Mo.App. 601, 608; Jennings v. Swift & Co., 130 Mo.App. 391, 110 S.W. 21 [2]. See also Cordray v. City of Brookfield, Mo., 88 S.W.2d 161, 163 [4–6]; Kaley v. Huntley, Mo.App., 88 S.W.2d 200, 205 [13]. Appellant makes no point that the verdict is excessive in amount. Benefield v. Thompson, Mo.App., 139 S.W.2d 1009, 1012 [3, 4]. He has not discharged the burden of establishing prejudicial error. Sang v. City of St. Louis, 262 Mo. 454, 171 S.W. 347, 350 [7].

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as opinion of the court.

All concur.